The next matter number 22-1231 United States versus Ricardo Perez-Delgado at this time would counsel for the appellant please introduce himself on the record to begin. Almost 10 years in excess of the top of the guideline range for what is admittedly very serious. The variance was not explained whatsoever by the sentencing court and for that reason alone the sentence must be reversed. Furthermore, while the sentencing judge does not offer an explanation, the government tries to come up with some theoretical explanations and as a substantive matter one of those hold water as well. Can I ask you one thing? The judge does zero in on the fact that your client was found by the judge to be the shooter, correct? Yes. Okay. I couldn't tell from your brief whether you are contesting that finding. We do not. You do not contest the finding. We do not. So why isn't that factor a sufficiently serious distinguishing factor to explain both the variance and the disparity? First as to the variance, the guidelines were calculated based on the first degree murder offense level, 43, which is the very highest level. That's as far as the offense levels go. The most serious crimes, most of them involving someone being killed. The gruesome as it is, the contention here is not only was the person beaten to death, but this defendant then shot the victim even after that. Why doesn't that show a level of depravity which might justify a variance? As to relative culpability, which was never discussed in those terms, I submit that the beating was engaged in by several of the defendants, which the defendant was one. And then on top of it, the defendant did something that you're not contesting. He was found to do that no one else did, which was then he shot the victim. The beating itself was equally as lethal. Had he not shot the victim, the victim still would have died. That's what makes it particularly depraved, potentially, that he then also shot the victim. When you look at the guideline range, when you look at the obligation of the court to point out factors not taken into account or not adequately taken into account by the guidelines, I submit that the range of offenses, the most serious, most concerning, if you will, the most depraved offenses are already swept within that guideline. Effectively, you couldn't vary from this guideline? I'm not saying that you could not vary ever, but one important context that I urge you to take into account when deciding whether this really – well, first I would say the sentencing judge did not say any of this, so the case has to be reversed on proceedings. I thought the sentencing judge made a point of identifying him as distinguished from the other defendant because he was the shooter. He mentions the shooter like he mentions many other facts. He does not explain. He does not point out. He does not analyze. But I would, picking up on the question your Honor asked in the previous argument, I would point out that when the U.S. Attorney's Office, the District of Puerto Rico, recommends not the top of the guideline range but something very close to the bottom of the guideline range, in this case, when the office which prosecutes cases day in and day out and has a sense of what is the mainline of these admittedly very serious offenses, that while it's certainly not binding, I think that informs the court in deciding whether there was an adequate explanation at all, whether even shooting a victim after a beating is something which takes it out of this very high guideline level. And I submit that it does not. This three-seconds report does not identify. I don't think I understand what you're saying. Could you try that again? Are you saying that the U.S. Attorney's Office here has a good feel for what crimes are committed or what punishments are meted out in their court when they're making their recommendation? It's an informed recommendation that should carry some weight? Yes, I am. I am saying that when the U.S. Attorney's Office makes a recommendation that's almost at the bottom of the guideline range, that we should resist the impulse to say, yes, there is a terrible fact here, because in, I submit, almost all of the first-degree murders that are prosecuted federally, there are some terrible facts. And so in saying somehow this case, in ways that the Judiciary Court doesn't even articulate, but if the question is, could this case ever warrant an above-guideline sentence, I'm not saying that the U.S. Attorney's Office's position that it's at the very low end of the guideline range is dispositive, but that at least ought to make us hesitate to just automatically think that, yes, this was a terrible event, because virtually all of the offenses at this level, virtually all of the cases that end up in this guideline range, also have terrible aspects to them. And the district court does not deal with any of that. In fact, if you look at the transcript, you get to the point where he's ready to impose sentence. He doesn't even acknowledge that there's a variance issue at all. The sentence court says, I disagree with the plea bargain, and so I'm going to impose 40 years. Until you hear 40 years, you have no idea that that's an explanation for anything other than an in-guideline sentence. And so for those reasons – But do I – right. One thing our case law does say is that you can, in some instances, infer the grounds, partly from the parties' arguments, to the court. It wasn't the – and I guess what you would say here is that's hard to say, given the recommended sentence was much, much lower than this, so there's no basis for doing it that way. And I would say you can't do it also because when you look at the sentence ecology, there are no words of explanation. When you look at the statement of reasons forms, the – if I may finish this thought – in that form – You would say basically this just is on all fours with our prior case law saying the Baroque recitation. I consider the various factors, listing various facts, and then having a high-magnitude variance. That is not a sufficient explanation under our case law. This is exactly that. I certainly agree with that. I just have one other question. We've also said the greater the variance, the greater the explanation required, and I – that, I'm assuming, is part of your argument as well. Not only is there just a listing, but there really isn't much of an individualized explanation about the defendant, except I guess if you look at page 122 where he observes, like, who Mr. Perez is and what his background is. And nothing in those circumstances would warrant a variance, yes or no? Can I just understand what – just before you sit down – what your argument on appeal has been? There's a piece of it which is this Rule 32 notice point and the disparity point. Is there a separate, independent of all that, inadequate explanation, procedural reasonableness challenge? Yes. And was that raised below or not? It was raised below because there was an objection made after sentence was imposed to the sentence being above the guideline range. In other words, to a variance. I acknowledge that's general in nature, but the deficiency is general in nature. This is not a procedural objection to the judge articulating a particular – I see. You said specifically that what the counsel did say that the objection was to it being procedurally unreasonable as well. Yes. Thank you. Thank you, Counsel. At this time, would Counsel for the Government please introduce himself back on the record to begin? May it please the Court, Brendan Hance again for the United States. The District Court did not err substantively or procedurally when it imposed an utterly variant sentence on Mr. Perez. His offense conduct was especially heinous, including because he personally shot the victim in this case six times, killing him after he and his co-defendants – All of those facts are definitely in the record, but you were just a second ago telling us about a case and how that case, in which we required more of an explanation than was given, was very different from the last case. Why isn't the case just like this case? There's a listing of facts, there's a high variant sentence, there's a paragraph of general statements about why the sentence is being imposed, and as far as I can tell, nothing more than that. So what is it that makes this explanation sufficient? I'd like to answer that question with respect to the facts of this case, and then I'll address the cases that Your Honor mentioned specifically. With respect to this case, the sentencing court first characterized the crime in its own words as a violent crime in which the victim was brutally murdered. Again, that's the court's own characterization, it's not the statement of fact through the PSR. The court then went on to describe the offense at some length, giving a significantly more detailed description of the offense facts than Mr. Perez's sentencing proceeding that we discussed. It runs for about six pages of the transcript. And the court largely relied on the PSR's description of the offense conduct, as it was allowed to do, of course, especially because there were no objections to the PSR. But if you can get to the, does that mean it's a Cologne-Cordero case? Yes, Your Honor, I'm happy to address the Cologne-Cordero case. So why is this different than that case? Because the district court in this case emphasized, well, for several reasons, Your Honor. First, here we have, in terms of preservation, a general objection to the procedural reasonableness of the sentence, but not one that asked the court to explain more about why it imposed the sentence. But additionally, in Cologne-Cordero, as I mentioned, there was nothing from the record for this court to glean a fair inference of why the district court imposed the sentence that it did. In that case, again, the court had mentioned something about a ghost gun, but it wasn't clear why that was particularly relevant in the circumstances of this case. Here we have clear emphasis from the district court on the brutal and violent nature of this crime. But the brutal beating is equally true of the co-defendant, who didn't get the 10-year variance. And the government here had recommended, notwithstanding the brutal beating, a sentence that was substantially lower. It wasn't a variance at all. Now it's not only just a variance, but it's 10 years on top of that. So what is the judge offering to explain why that big a deviation? In addition to the brutal nature of the crime, the court also emphasized several times on the record—this is at page 127 of the appendix—that Mr. Perez was the shooter. And my friend on the other side mentioned that that was sort of thrown in there. It wasn't anything different from what was communicated in the rest of the court's recitation of facts. But I don't think that's correct. As their opening brief says at page 6, this was the—it calls it the only—deviation of substance from the district court's recitation of PSR facts. The court, in reciting a number of facts from particular paragraphs of the PSR, then interjects more than once that Mr. Perez was the shooter. In terms of what this court has said about adequate explanations, that even in the context of a variance, all that is required is a plausible and coherent rationale. And this court has also said many times that the more obvious the reasons for a choice, the less that needs to be explained. I take that point. I guess the thing that's just difficult is how obvious is it that that is the thing that he relied on that led to the 10-year variance? If it is, he could say so. Is there any point at which he says that's the basis for the variance? I can't seem to see another fact that would be all that distinguishing from the other defendants. I think the fact that the court conspicuously interjects several times that Mr. Perez was the shooter is enough, given the obvious relevance of the fact that Mr. Perez was the shooter to his culpability in this crime. I guess my concern is—I think in some cases I would agree with you, but the problem is we've got a 10-year variance sentence over the top of the highest guideline here and over and above his code of evidence. So how, based on that alone, do we infer what the judge meant? When he didn't say, I think a 10-year variance is justified here because this person not only engaged in a brutal beating, but he shot the person. Well, I think the fact is, just in another way, just to add to the point, one of the functions of the requirement of the explanation is because, at least from the perspective of a general sense of due process, the defendant is entitled to know why they are serving the sentence for as long as they're serving it. And the question is, could you know why exactly you got that sentence? You could guess, you could infer, you could—sometimes we say that's enough, but in a circumstance in which, I think as the defendant's pointing out, this is the top of the guidelines range, because these are all extremely serious crimes, they have to involve that. And yet, this is now 10 years on top of that, and there's not a sentence that says, here's why that's happening. And why wouldn't it just make sense to say, well, since one of the functions of the explanation requirement is so that the defendant knows why they're spending as long without liberty as they are, the judge should explain in ways that make evident to the defendant why that— So I'm not disputing that a sentence could be given on that basis, on these facts, and I recognize there's even a certain way in which isn't it a waste of time? The judge could give the same sentence anyway. What's the point of the explanation? But one of the functions of the explanation is that people who are sentenced know why they're sentenced. Your Honor, this court has said two things about the adequacy of the court's explanation of sentence. The court has said that if the district court gives emphasis to particular facts, especially particularly facts that are obviously relevant, that that is sufficient, and we would suggest this is such a case. But the second thing the court has said is that— It doesn't answer why the guideline, which takes into consideration that somebody is dead, and the guideline takes into consideration that there is a murderer. And so to say that he's the shooter, you're still trying to say that that factor takes it outside of the guideline. The guideline says there's a murderer. And by 10 years. The guideline's calculation took into account that the victim died, but it didn't take into account that this particular defendant was the one who shot and killed him. And it didn't take into account, again, the brutality of the crime. But I want to get back to the point about the second thing this court has said about inadequate explanations of sentencing, which is that if this court can draw a fair inference from the record about why the district court imposed the sentence that it did, that's sufficient even when there's not really a variant sentence. But was the fair inference that this required 10? Your Honor, I think given the obvious relevance of the fact that the defendant shot the victim six times and killed him, it would be strange to tell district courts that it's not sufficient to mention several times such an obviously relevant fact. And then that is not sufficient, but that the court has to explain that that is a relevant factor that the court considered in imposing sentence. Of course that was a relevant factor that the court considered in imposing sentence. And this case is very much unlike the cases in which this court has said that the district court did not give emphasis to particular facts or did not say enough for it to draw a fair inference as to what the sentence was imposed on the basis of. In my right in reading, I found in your brief that you also said that the defendant sort of, I think the words you used were privileged operating, stable family education level, that those were some of the reasons, that was some of the reason why the district court buried the sentence. Did I read that right in your brief? I want to be clear, Your Honor. We raised that in the context of the defendant's sentencing disparity argument, which he never raised below. The government is not claiming that that was a major basis for the district court's imposition of sentence. Was it part of the basis? The district court didn't specifically mention that. Do you infer that it was part of the basis? Not necessarily, Your Honor. So it's irrelevant to the disparity point? Well, Your Honor, again, the defendant never raised the disparity point below. If that point had been raised, this might have been a consideration. Why did you raise it in your brief? Well, as this court has said, the substantive reasonableness of a sentence requires both a plausible rationale and a defensible result. And so in our brief in addressing the sentencing disparity, we mentioned that as another reason why the result might have been defensible. Right, that this defendant committed this crime for greed and nothing else. That is a relevant consideration. But again, we are clear that the district court focused on the brutality of the crime, and that was the driving force behind its rationale. And when you say the brutality of the crime, you mean what? Meaning both the beating that the victim sustained, which the defendant does not deny participating in fully, as well as the six gunshots that the defendant inflicted on the victim. And it's solely the six gunshots that support the variance? I would say that the six gunshots are the main factor that the district court relied on in imposing sentence. Now, there are other factors that could be gleaned from the PSR, which the district court also mentioned it adopted. For example, that this defendant recruited another defendant to join the scheme. But the six gunshots that the district court relied on were particularly important, and this is made clear by the district court's comments. So the gunshots were superfluous to the death, but you're saying that it was relevant to the depravity, and that's what the district court went on? Certainly relevant to the depravity, Your Honor. And on the point about the autopsy records, I want to make a couple of points very quickly. One is the fact that a medical professional could conclude after a full autopsy that the victim would have died from the brutal beating, regardless of the gunshots, does not necessarily say anything about the defendant's culpability here. The defendant is not a doctor. There's nothing in the record to suggest that he knew that the victim was going to die, regardless of the gunshots, and he doesn't deny that he inflicted the six gunshots or that they killed the victim. But the second point I want to mention, which is even more important, is that the defendant, again, doesn't deny fully participating in the brutal beating. And so his argument is that he was denied the opportunity to come into sentencing and say, Your Honor, it's true I shot the victim six times and killed him, but do you see the autopsy records that said that the beating I helped inflict on the victim also would have killed him? That's not a particularly persuasive sentencing. And I agree with you on that. Does the district court mention the six shots? You've mentioned it about five times, but I didn't see it in the sentencing transcript by the district court explaining the variance. I don't know if the district court specifically mentioned it. So should we deduce that the number of shots was relevant to the variance or irrelevant? I think that it would be relevant. How do we know the district court thought it was? Well, I think the fact that the district court mentions that he was the shooter. So does that mean that we think that the number of shots was relevant to the district court or not? I think that it could be relevant, but it wasn't part of the driving force of the district court's imposition of sentence. I did want to mention a couple of cases that I wanted to get to in the context of Your Honor's question about those cases that you mentioned earlier. This case, again, as I mentioned, is unlike those cases because there's both an emphasis on particular facts and a fair inference to be drawn from what the district court said in sentencing. And I would point to the Diaz-Lugo case, which we cited in our brief, as well as the Ortiz-Perez case that we cited. I want to briefly describe the Ortiz-Perez case where the court gave what this court called an undifferentiated explanation and did not explicitly state what factors contributed most directly to the imposition of each of the component sentences. Nevertheless, in that case, which involved unlawful possession of a firearm, the court, in describing the offense of conviction, expressed concern about the defendant's inappropriate use of the firearm, pointing it at people essentially, which created a threat to life. And this court inferred that the sentencing court had relied on those aggravating factors, which provided a plausible sentencing rationale. Here, of course, we have much more than that. And that was for a procedural reasonableness challenge? That was for, I believe, a procedural reasonableness challenge, yes. The question was whether the district court adequately explained the sentencing. And how big was the variance there? I'm not sure about that, Your Honor. I'd have to check. But the other case that I wanted to mention is the O'Fray-Campos case, which the defendant mentions in his reply brief. In that case, the court inquests a statutory maximum sentence. That was more than two and a half times the maximum recommended guideline sentence. Now, the defendant points to the fact that the court, in that case, mentioned the defendant's role as a trigger man. That was the word that he used. But if you read the case, it's clear that reference to a trigger man was a generic reference to engaging in violence in connection with a narcotics activity. The sentencing court specifically did not consider any specific acts of violence. There was an alleged murder that the defendant, in that case, had committed. But the sentencing court said it wasn't going to consider that. Now, the O'Fray-Campos court acknowledged that even the defendant's general involvement in gun violence, quote, may have justified a substantial upward variance, but held that the facts were not so unusually egregious as to justify the imposition of the most severe possible sentence. And crucially, the O'Fray-Campos court also emphasized that, quote, if the court had in fact weighed the murder as a factor in sentencing, the imposition of such a severe sentence might have been justified. Here, of course, we have not a two and a half times guideline sentence, not a statutory maximum sentence, which would have been likely imprisonment because the government declined to seek the death penalty in this case. But also, we have the district court, in fact, specifically relying on the fact that the defendant here committed the murder, was the person who shot the victim, that it was a particularly brutal murder. And we respectfully suggest that the district court's emphasis on those facts, as well as the fact that a natural inference can be drawn from what the district court said about those facts, is sufficient for the explanation of sentence in this case. Thank you. Thank you, Your Honor. I'm sorry, I just have one more question. Certainly, Your Honor. And this sort of goes back to the discussion that we were having before. Is it fair to assume that when the U.S. Attorney's Office comes up with the defense, the U.S. Attorney's Office, is that taking into consideration the strengths of the case? I would think so, Your Honor, yes. And so it just seems to me that you know the case, and as part of your sentencing recommendation and agreement, that's a factor that the district court doesn't have to consider at all. They just present it with, this is what we agree to, and sentencing the U.S. Attorney's Office isn't called upon at all to explain why that's the recommendation, you know, about the defendant, but that's the recommendation of the U.S. Attorney. And you have a district court who says, pure facts before me say this, without taking into consideration whether, you know, the intricacies of proving it beyond reasonable doubt. And then the district court is all in one. Your Honor, there are always a lot of considerations that come into play when it comes to plea bargaining. I would point out in particular that the victim's family members in this case who spoke at sentencing talked about the trauma that the victim's staff had inflicted on them, and one consideration the government always takes into account is sparing the victims the trauma of having to relive all of that through trial. But regardless, the extreme and brutal nature of particular offense conduct is always a relevant consideration at sentencing, and indeed an obvious consideration at sentencing, particularly when you have a defendant like this defendant who both engaged in the brutal beating that killed this man and also fired the gunshots that killed this man. My whole point is all of that's a consideration when you make a recommendation. And the U.S. Attorney's Office would take everything into account about the case in making a sentencing recommendation, and it stands by that recommendation, but it also stands by the fact that the district court here had a lot of leeway to impose a substantively reasonable sentence and respectfully did impose a substantively reasonable sentence in this case that we respectfully argue was adequately explained on the record. Thank you. Thank you, counsel, at this time. Counsel for the appellant, please reintroduce yourself on the record. You have a two-minute rebuttal. Counsel for the appellant, three quick points. How obvious is it that it was not obvious at all what the basis for the variance was? There were no words of explanation on the record. Number one, why just to – I mean, given that we have sometimes inferred, and we've inferred no great compass, even pretty significant variances, why isn't the reference to – I mean, it's a very detailed recitation of a very, very brutal crime that results in a death, in that in addition, unique among the co-defendants, this defendant is identified by the district court on a number of occasions in the account as the shooter. Why doesn't that fact – if it was just a murder, as horrible as that is, in which it was a shooting victim, you might say, well, that can't explain a 10-year variance, just for the reasons you said. But given the detailed account of the brutality of the beating that led to the death, then identifying him as a shooter on top of that, why wouldn't we say, well, obviously that's what it was? So that's the explanation. Now we just go on to is that substantively reasonable? It is not obvious at all. We don't know whether the court – or I guess maybe put it a different way. This depends on what standard of review we're on. If it's on plain error, then it really doesn't even – it would have to be obvious it wasn't. Well, on plain error, right? Because you're really saying the explanation was so clearly or obviously inadequate that you get to win, but you're saying we're not on plain error. Is that right? I believe it was clearly inadequate because there is no analysis that even can be inferred. What it looks like is the judge formed an impression that 40 was the right number, and there's really no explanation. I think that when my emissary says that the guidelines didn't take into account the fact that he shot and killed him, in fact, the guidelines plainly take that into account. We don't know if the judge inferred from the fact that he was the shooter that he was the one who used a handgun, and handgun offenses should be punished more severely. I submit that's not a valid basis to go beyond the guidelines because many of the guidelines cases in this guideline include gun violence. Did the court reach the conclusion that it was only that shot which was lethal because relative culpability was never teed up? It was never argued. The court never said anything about relative culpability. If that had been argued, and this in part goes to our notice issue, then the court may have been enlightened by the fact that the beating was equally lethal. We don't know whether that was the case. We can't infer what the reasons were for departing so we don't even know, or for varying I should say, so we don't even know if those are legitimate reasons. So I submit that the record is not sufficiently clear to sustain. On that last point, when the parties were arguing to the district court at Samson, I take it the defendant was pressing the argument. Did the issue of what was the cause of death, was that plainly resolved? Is there any basis for thinking that the judge might have been under the impression that the shooting was the cause of death as opposed to the beating? The issue never came up because if you look at the pre-sentence report and the plea agreement and the indictment, it is all written in terms of the defendants did this, the defendants did that, and so there was no reason in defense counsel's elocution to address... Including because it just said the defendant shot without saying which one. Correct. So at least one possible ambiguity that is a result of the way this is explained is that it's unclear whether the district court was of the view that the particular person who shot caused the death relative to the others, which would potentially then explain the variance. But we don't know that's true, so how can we say we know what the reason for the variance is? That's correct. And furthermore, if causing the death was what was in the judge's mind, that's so clearly encompassed in the murder guideline that it cannot possibly be a valid basis for variance. Counsel, I know this could be wrong, but they indicate that in addition to the district court pointing to the reason for the PSR, the district court went on to say that over 50% of the victim's bones were broken and the victim was then released and shot with his own firearms approximately six times by Mr. Perez. So that does indicate that the court actually pointed that out. Yes. Does that change your argument that that was only the recitation of facts as opposed to an explanation of why 10 is the magic number? That is what the judge said. He didn't say anything about that being a basis for the variance or something that's not already within the already very disturbing mind run of cases which are encompassed in first degree murder. And the government certainly has not cited a single case in which the kinds of factors which would support an upward variance from a first degree murder guideline have been involved. And so on this kind of ambiguous record to say that this substantial and upward variance from a guideline and I'm sorry, one other point you would ask about the U.S. Attorney's recommendation. I think a recommendation is a recommendation. The U.S. Attorney's Office knows how to avoid making a recommendation in plea bargaining. The U.S. Attorney's Office can say we will agree not to take a position. But when the U.S. Attorney's Office gets up there and says we affirmatively recommend this sentence, I think that can be taken at face value. Now it's not binding on the court, but when the recommendation is almost at the bottom of the guideline range, it really ought to make the district court pause and this court pause in saying so easily, well, this was a violent and brutal case and therefore this warrants a departure out of the heartland of these all very violent and troubling cases. There's just no basis for a variance here. Thank you. Thank you, counsel. That concludes argument in this case.